UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| CAMILLE KEITH, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 21-2010 (RC) |
| | : | | |
| v. | : | Re Document No.: | 4 |
| | : | | |
| U.S. GOVERNMENT ACCOUNTABILITY OFFICE, | : | | |
| | : | | |
| Defendant. | : | | |

### MEMORANDUM OPINION

GRANTING DEFENDANT'S MOTION TO DISMISS

## I. BACKGROUND

This case comes before the Court on Defendant U.S. Government Accountability Office's ("GAO") motion to dismiss for failure to state a claim, so the Court accepts the factual allegations in Plaintiff Camille Keith's Complaint as true at this stage and summarizes them here. *See, e.g.*, *Robb v. Vilsack,* No. CV 20-0929, 2021 WL 3036796, at *1 n.2 (D.D.C. July 19, 2021). Keith, an "African American female" in her forties who has a hearing-impairment disability, was a forensic audits analyst at GAO. Compl. ¶¶ 12, 16, 18, ECF No. 1. She has a 17-year record of "exemplary work performance" at GAO. *Id.* ¶ 22. In August 2018, Keith was assigned to a team tasked with examining for fraud and related issues at the Federal Emergency Management Agency ("FEMA"). *Id.* ¶¶ 19, 23. "Ms. Fagan," whose first name Keith does not recall, served as Keith's supervisor or "Designated Performance Manager." *See id.* ¶ 20.

At some point, apparently in May 2019, Keith received her "2018 performance appraisal rating." *Id.* ¶ 23. Unhappy with the review, she disputed it. *Id.* Keith does not specify on what grounds she disputed her 2018 performance appraisal rating. *See id.* But GAO was displeased

that Keith had disputed the review, so it retaliated against her by failing to give her "constructive feedback that would have allowed her to improve her work performance for the 2019 appraisal period." *Id.* The result was a negative 2019 performance appraisal that rated Keith's work "unacceptable" in several categories. *Id.*

Also while on the FEMA engagement, Keith received "unreasonable time constraints to complete her projects"; for example, her supervisors required her to complete a "Record of Interview" and a related "review of a 65-page monitoring document," within one day after the interview. *Id.* ¶ 24. Other examples included being assigned to lead a meeting with only "a couple of hours to prepare," and being told "at the end of the workday" that she had to "completely revise a document by the next morning." *Id.*

Keith further complains that she "was barred from travelling with the team on site visits" in February 2019. *Id.* ¶ 25. Thus, when the rest of the team prepared to travel to Texas, Fagan told Keith she would not be joining. *Id.* Keith later asked whether she would join the team on a trip to California, and "Fagan replied no due to 'team structure.'" *Id.*

To make matters worse, in June 2019, the human resources office told Keith that she could no longer work from home under a "telework arrangement" because of her "unacceptable work performance." *Id.* ¶ 26. Keith says that this was the first she had heard of this criticism of her work; she therefore did not have the opportunity to receive "constructive feedback" before losing the privilege of working remotely. *Id.*

All of this was punctuated by a series of unpleasant interactions involving Keith's hearing disability that "made her feel upset, uncomfortable, and belittled." *Id.* ¶ 27. Once, Keith announced to her team that she would be getting hearing aids. *Id.* Fagan responded, "Good." *Id.* Keith asked what Fagan meant, and Fagan clarified, "you're getting help." *Id.* Keith

"responded [that] she did not think there was anything good about being 44 years old and getting hearing aids." *Id.*  Separately, during meetings, another "co-worker," Director Rebecca Shea, "kept asking 'Can you hear, can you hear'"? *Id.* ¶¶ 20, 27.  Still another "co-worker," "Analyst-in-Charge" Erin Villas, "compared [Keith] getting hearing aids to her sister getting glasses." *Id.* ¶ 27.  Keith made it clear that she considered these comments offensive and that they made her uncomfortable. *Id.* at ¶ 27.  GAO "managers" also provided Keith with "conflicting instructions about whether to speak up when she could not hear." *Id.*  At first, they told her not to interrupt meetings when she could not hear because she would receive notes after the meeting. *Id.*  But then, they turned around and told her "it was unacceptable not to speak up if [she] could not hear." *Id.*

In the instant lawsuit, Keith alleges that the lack of constructive feedback, 2019 negative performance appraisal, ban from site-visit travel, termination of her telework option, "negative comments about her disability," and "conflicting directions regarding her participation in work activities," were retaliation for activity protected by Title VII of the Civil Rights Act of 1964, namely Keith's "disput[e] [of] her 2018 performance appraisal rating." *Id.* ¶¶ 70–71.  Keith further alleges that each of these same events constituted discrimination on the basis of her race and sex in violation of Title VII, as well as discrimination on the basis of her age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") and discrimination on the basis of her hearing disability in violation of the Americans with Disabilities Act of 1990 ("ADA"). *Id.* ¶¶ 30, 51, 91 96.  In response, GAO moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss the Complaint for failure to state a claim upon which relief can be granted.  Def.'s Mot. Dismiss, ECF No. 4.

## II.  LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" sufficient to give the defendant fair notice of the claim and the grounds upon which it rests.  Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam).  A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a complaint" under that standard; it asks whether the plaintiff has properly stated a claim.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Twombly*, 550 U.S. at 555–56 (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss.  *Iqbal*, 556 U.S. at 678.  A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of legal conclusions that are couched as factual allegations, *see Twombly*, 550 U.S. at 555.  However, a court considering a motion to dismiss must accept the complaint's factual allegations as true.  *See, e.g.*, *Lucas v. District of Columbia*, 214 F. Supp. 3d 1, 5 (D.D.C. 2016).  Moreover, the court must "draw all reasonable inferences" in favor of the plaintiff.  *DC2NY, Inc. v. Acad. Express, LLC*, 485 F. Supp. 3d 113, 118 (D.D.C. 2020).

## III.  ANALYSIS

Keith's Complaint does not state any claim upon which relief can be granted.  Specifically, Keith has not stated any discrimination claims because the Complaint does not

sufficiently allege that any of the GAO acts she complains about took place because of any of her protected statuses.  Keith's retaliation claim fails because the Complaint does not allege that the activity on which it turns, Keith's objection to her 2018 performance review, was related to discrimination.  Finally, Keith has not alleged the sort of severe or pervasive harassment necessary to state a hostile work environment claim.  Accordingly, the Court grants GAO's motion to dismiss.

### A.  The Complaint Does Not Sufficiently Allege the Causation Element of Any of Keith's Discrimination Claims

"[T]he two essential elements of [Keith's] discrimination claim[s]" under Title VII, the ADEA, and the ADA[1] "are that (i) [Keith] suffered an adverse employment action (ii) because of [her] race . . . sex . . . age, or disability."  *See Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008) (citing 42 U.S.C. § 2000e–16(a); 29 U.S.C. §§ 621 *et seq.*; 29 U.S.C. §§ 701 *et seq.*); *Hollabaugh v. Off. of the Architect of the Capitol*, 847 F. Supp. 2d 57, 64 (D.D.C. 2012).  Keith has not plausibly alleged the second element.[2]

---

[1] While the ADA does not apply to federal executive branch employees, it does apply to employees of the GAO, an "agency of the legislative branch."  *See Duffy v. Dodaro*, No. CV 16-1178, 2020 WL 1323225, at *8 (D.D.C. Mar. 21, 2020) (citing 42 U.S.C. § 12209(5)).

[2] GAO also argues that Keith has not pleaded the first element, an adverse action.  Def.'s Mem. Supp. Mot. Dismiss at 4 ("Mem."), ECF No. 4-1.  However, GAO's arguments on this point turn on D.C. Circuit case law requiring an adverse action to involve "objectively tangible harm" to the employee.  *See, e.g.*, *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009); Mem. at 4–12.  After the conclusion of briefing in this case, the *en banc* D.C. Circuit held that this standard is incompatible with the text of Title VII.  *Chambers v. District of Columbia*, 35 F.4th 870, 874–75 (D.C. Cir. 2022) (en banc); *see also Liu v. Georgetown Univ.*, No. CV 22-157, 2022 WL 2452611, at *4, *6 (D.D.C. July 6, 2022) (applying *Chambers* to both Title VII and ADEA claims).  Because the Court's conclusion, explained below, that Keith has not successfully pleaded causation requires it to grant GAO's motion to dismiss all of her discrimination claims, the Court does not have the occasion to address how *Chambers* impacts the adverse action element of Keith's claims.  The Court will assume for purposes of this opinion, without deciding, that the unpleasant events Keith faced at work were adverse actions on the part of GAO.

Though the "initial burden" of pleading the "because of" element is "not onerous," a plaintiff cannot survive a motion to dismiss merely by providing "threadbare" or conclusory allegations of discrimination; nor can a plaintiff state a claim "merely [by] invok[ing] [her] race[, sex, age, or disability], in the course of a claim's narrative."[3] *See Doe #1 v. Am. Fed'n of Gov't Emps.*, 554 F. Supp. 3d 75, 102–103 (D.D.C. 2021) (cleaned up) (addressing a claim under 42 U.S.C. § 1981, but noting that the same framework governs § 1981 and Title VII claims and "rely[ing] on case law interpreting section 1981 and Title VII"). Rather, a "plaintiff must allege some facts" to give rise to the reasonable inference that her race, sex, age, or disability "was the reason for defendant's actions." *See id.* at 102 (cleaned up); *Massaquoi v. District of Columbia*, 81 F. Supp. 3d 44, 50 (D.D.C. 2015) ("[P]laintiff's conclusory allegations of discrimination, without any supporting facts, 'stop short of the line between possibility and plausibility of entitlement to relief.'" (citation omitted).

A frequent means of pleading factual allegations sufficient to "raise an inference of discrimination" under Title VII, the ADA and the ADEA is "by showing that [the plaintiff] was treated differently from similarly situated employees who are not part of the protected class." *See Doe #1*, 554 F. Supp. 3d at 103 (quoting *Brown v. Sessoms*, 774 F.3d 1016, 1022 (D.C. Cir. 2014)); *Hylton*, 2018 WL 4374923, at *2; *Bartlette*, 208 F. Supp. 3d at 321. This appears to be the route Keith attempts.[4] Pl.'s Mem. of Law Opp'n Def.'s Mot. Dismiss at 5–6 ("Opp'n"), ECF

---

[3] The same standards for assessing causation apply to discrimination claims brought under Title VII, the ADA, and the ADEA. *See Doe #1*, 554 F. Supp. 3d at 103; *Hylton, v. Watt*, No. CV 17-2023, 2018 WL 4374923, at *2, 4 (D.D.C. Sept. 13, 2018); *Bartlette v. Hyatt Regency*, 208 F. Supp. 3d 311, 321 (D.D.C. 2016); *B.D. v. District of Columbia*, 66 F. Supp. 3d 75, 80 n.7 (D.D.C. 2014).

[4] There are other ways of sufficiently pleading that discrimination was the reason for an adverse action. A plaintiff may offer (but is not required to offer) allegations that directly show that the employer's decisionmaking process was discriminatory, or allegations that show that an employer's stated neutral reasons were pretextual. *See Easaw v. Newport*, 253 F. Supp. 3d 22,

No. 11-1 ("Plaintiff has provided sufficient factual allegations to establish that similarly situated employees who were outside of her protected class were treated more fairly than she was, and thus the adverse employment actions were a result of her race, sex, age, and disability. . . . Upon information and belief, Agency leadership used their position to harass Plaintiff, an African American female, who spoke out about the unfair performance review she received in 2018 and the comments she faced due to her disability.  Plaintiff was aware that she was the only individual on her team subjected to such treatment.").  But to plausibly plead the causation element in this way, Keith must allege some facts to ground a reasonable inference that the plaintiff was in fact similarly situated to comparator employees.  "A plaintiff's assertion that that she is similarly situated to others is just a legal conclusion—and a legal conclusion is never enough to state a claim."  *Doe #1*, 554 F. Supp. 3d at 103 (citation omitted and cleaned up).

Keith supports her allegations that GAO treated her differently from similarly situated employees, and her allegations of discrimination more generally, exclusively with conclusory statements.  Keith vaguely says that the various actions she complains about were "discrimination" against her and were undertaken because of her race, sex, disability, and/or age, *see* Compl. ¶¶ 22, 23, 24, 25, 26, 32, 34, 35, 38, 39, 41 53, 55, 56, 59, 60, 62, 63, 91, 93, 96, 98,

---

26 (D.D.C. 2017).  Or, depending on the circumstances, a plaintiff may add plausibility to allegations of discriminatory intent by alleging that a supervisor made comments or engaged in behavior that was indicative of bias, or that an employer's stated reasons for an adverse action make little sense against the backdrop of other allegations in the complaint.  *See Baker-Notter v. Freedom F., Inc.*, No. CV 18-2499, 2019 WL 4601726, at *10 (D.D.C. Sept. 23, 2019).  More generally, a Plaintiff may plead discriminatory treatment by "creating a mosaic of intentional discrimination by identifying bits and pieces of evidence that together give rise to an inference of discrimination."  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) (citation omitted and cleaned up).  At bottom, "[d]etermining whether a complaint states a plausible claim [of discrimination] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Golden v. Mgmt. & Training Corp.*, 319 F. Supp. 3d 358, 376 (D.D.C. 2018) (quoting *Iqbal*, 556 U.S. at 679).

but these conclusory allegations cannot by themselves give rise to an inference of discrimination. Many of them serve only to "invoke" Keith's protected statuses "in the course of [her] claim's narrative"; they cannot themselves state a claim. *Doe #1*, 554 F. Supp. 3d at 102.

The only factual allegations in the complaint describe the various events that Keith contends were adverse actions. For these to support an inference of discrimination, a similarly situated employee must have been treated differently. *See Massaquoi*, 81 F. Supp. 3d at 49 ("[I]t is not reasonable to infer that just because [the plaintiff's] managers were of a different national origin, gender, and religion than the plaintiff, all disciplinary actions they took against the plaintiff were motivated by these differences. Such an inference is not reasonable here because the complaint is entirely void of any suggestion that the plaintiff was treated any differently than similarly situated employees who were not of the plaintiff's national origin, gender, or religion."). On this score, Keith again relies solely on conclusory allegations:

- "Plaintiff has been treated differently and subjected to different terms and conditions of her employment due to her race." Compl. ¶ 35.
- "Other employees who were similarly situated, but were non-Hispanic or Caucasian individuals, which is different from the Plaintiff, have been treated more favorably than the Plaintiff with regards to the terms and conditions of employment and workplace conditions." *Id.* ¶ 37.
- "Similarly[] situated non-Hispanic and Caucasian employees were not subjected to the same, similar, or any adverse treatment as Plaintiff." *Id.* ¶ 48.
- "Defendant treated Plaintiff less favorably than similarly situated male employees." *Id.* ¶ 52.
- "Other employees who were similarly situated, but members of a class (men) different than Plaintiff, have been treated more favorably than Plaintiff in the terms and conditions of employment." *Id.* ¶ 58.
- "Other similarly situated employees who were younger (under 40) were not subjected to the same discriminatory treatment as Plaintiff." *Id.* ¶ 92.
- "Other similarly situated employees who did not have a disability (hearing impairment) were not subject to the same discriminatory conduct as Plaintiff." *Id.* ¶ 97.

These conclusory assertions cannot state a claim.  *Doe #1*, 554 F. Supp. 3d at 103 ("A plaintiff's assertion that [he] is similarly situated to others is just a legal conclusion—and a legal conclusion is never enough to state a claim." (citation omitted and cleaned up)).  Even construing these references to unnamed employees who did not share Keith's protected statuses to refer to the other employees on the FEMA team named elsewhere in the Complaint—something of a leap given that Keith does not allege any of these individuals' race, age, sex[5], or disability status— Keith does not include any allegations to support an inference that these employees were situated similarly to her.  She describes Erin Villas as a "co-worker," Compl. ¶ 27, but this term, absent further allegations of similarity in job duties, etc., is "fatally nonspecific."  *See Doe #1*, 554 F. Supp. 3d at 103; *Budik v. Howard Univ. Hosp.*, 986 F. Supp. 2d 1, 7 (D.D.C. 2013).  Indeed, all but one of these teammates held a different job title than Keith.  While Keith was a "Band 1 Analyst" and Paulissa Earl was an "Analyst," Villas was an "Analyst-in-Charge," Gabriel Fagan was an "Assistant Director," and Ms. Fagan was Keith's "Designated Performance Manager."  Compl. ¶¶ 18–20.  The Complaint provides information about Keith's qualifications, but Keith does not provide any comparative information about her teammates' qualifications.  *Id.* ¶¶ 21– 22; Opp'n at 3.

Moreover, Keith includes little to support the assertion that any of these employees were treated differently than she was; for example, she does not allege that any of them received longer timeframes to complete assignments than she did.  *Mapp v. District of Columbia*, 993 F. Supp. 2d 22, 25–26 (D.D.C. 2013) (concluding that the allegation that "Plaintiff was treated disparately compared to other similarly situated male probation officers in that she was subjected

---

[5] Based on their names and titles, four of the five co-workers named in the Complaint seem to have been women; references to these co-workers therefore cannot support an inference of sex discrimination.  Compl. ¶¶ 19–20.

9

to heightened scrutiny, reporting, and performance standards that were not applied to those male comparators" came "perilously close to the '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' that the Supreme Court cautioned against in *Twombly* and *Iqbal*" because it did not identify the comparators or how they were treated differently).  In short, Keith's allegations in support of her contention that she faced discrimination on the basis of her race, sex, age, and disability "stop[] short of the line between possibility and plausibility of entitlement to relief."  *Iqbal*, 556 U.S. at 678.

### B. The Complaint Does Not Sufficiently Allege the Protected Activity Element of Keith's Title VII Retaliation Claim

The elements of a retaliation claim under Title VII are "(1) that [the plaintiff] opposed a practice made unlawful by Title VII; (2) that the employer took a materially adverse action against [her]; and (3) that the employer took the action 'because' the employee opposed the practice."[6]  *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015) (citation omitted); *see* 42 U.S.C. § 2000e–3(a).  Keith has not alleged the first element.

"Not every complaint entitles its author to protection from retaliation under Title VII . . . because the plaintiff must demonstrate that [she] complained to the employer of some unlawful discrimination based on [her] membership in a protected class."  *Belov v. World Wildlife Fund, Inc.*, No. CV 21-1529, 2021 WL 4773236, at *5 (D.D.C. Oct. 13, 2021) (emphasis in original) (cleaned up).  "While no 'magic words' are required, the complaint must in some way allege unlawful discrimination, not just frustrated ambition."  *Broderick v. Donaldson*, 437 F.3d 1226,

---

[6] The D.C. Circuit has routinely applied Title VII's anti-retaliation rule to federal employers, *see, e.g.*, *Cruz v. McAleenan*, 931 F.3d 1186, 1193–94 (D.C. Cir. 2019), and the Supreme Court has "assume[d] without deciding that it is unlawful for a federal agency to retaliate against a civil servant for complaining of discrimination," *Green v. Brennan*, 578 U.S. 547, 553 n.1 (2016).

1232 (D.C. Cir. 2006). Keith alleges that she was "retaliated against by Defendant for disputing her 2018 performance appraisal rating." Compl. ¶ 23. The problem for Keith is that her Complaint does not say *anything* about the content or nature of the dispute she lodged against the 2018 performance appraisal rating, and therefore does not support any inference that the dispute concerned an allegation that the 2018 performance appraisal rating was in some way discriminatory. *See id.* ¶¶ 23, 71; *see Belov*, 2021 WL 4773236, at *6 ("Belov nowhere alleges that she reported sex discrimination to Human Resources. She therefore has failed to state a prima facie case of retaliation under Title VII." (emphasis in original) (cleaned up)).

Nor can the Court infer that the 2018 performance appraisal dispute mentioned any of the alleged acts of discrimination detailed elsewhere in the Complaint. The first of these, the failure to provide Keith with "constructive feedback," *id.* ¶ 30, seems not to have taken place until after the 2018 appraisal dispute. *See id.* ¶ 23 ("Plaintiff was retaliated against by Defendant for disputing her 2018 performance appraisal rating. *As a result*, Ms. Keith was essentially ignored, and did not receive feedback regarding her work." (emphasis added)); Opp'n at 6 ("It is important to note that all of the adverse actions mentioned in the preceding section occurred *after* Plaintiff contested her 2018 performance evaluation . . . ." (emphasis in original)). Thus, the 2018 dispute could not have objected to any of the specific acts of discrimination alleged in the Complaint. Keith does allege that "Defendant subjected Plaintiff to the aforementioned adverse employment actions because of her opposition to the unlawful and discriminatory employment practices of Defendant in violation of Title VII" and that "[t]he adverse retaliatory actions to which Plaintiff has been subjected . . . are a direct result of Plaintiff having previously engaged in statutorily-protected activity," Compl. ¶¶ 72, 74, but these vague and conclusory allegations

11

cannot save her claim—they do not tell us what the 2018 appraisal dispute was all about. *See also id.* ¶¶ 75, 76, 81 (similar conclusory statements).

In her opposition brief, Keith insists that "she believed and expressed" that the 2018 appraisal "was motivated by discriminatory animus" and that she "asserted that she believed it was discriminatorily motivated." Opp'n at 4–5, 7. But the allegation in the Complaint that the brief cites in support of these statements, Paragraph 23, does not allege that Keith expressed any belief that the 2018 appraisal was discriminatory when she lodged her dispute:

> Plaintiff was first retaliated against when she did not receive constructive feedback that would have allowed her to improve her work performance for the 2019 appraisal period. Specifically, Plaintiff was retaliated against by Defendant for disputing her 2018 performance appraisal rating. As a result, Ms. Keith was essentially ignored, and did not receive feedback regarding her work. Plaintiff observed that although she was assigned to the engagement in August 2018, Ms. Fagan did not advise her that there was an issue with her performance until May 2019. Without adequate feedback or warning, [Keith] was issued a performance appraisal rating for 2019 of unacceptable in the "Producing Quality Work" competency and marginal in the "Managing Own Workload" and "Working with Others" competencies. Ms. Keith faced other instances of discrimination and retaliation by the Defendant.

Compl. ¶ 23. "It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) (citation omitted). The proper vehicle for adding an allegation that the 2018 performance appraisal dispute alleged discrimination (or for adding any facts that would remedy the defects with respect to Keith's discrimination claims discussed above), would be a motion for leave to file an amended complaint. As the record stands, Keith fails to state a claim for retaliation because she does not plausibly allege that she engaged in any protected activity.

### C. The Complaint Does Not State a Hostile Work Environment Claim

Though the Complaint does not include a standalone count alleging a hostile work environment claim, it does note that "an employer may not create or condone a hostile or abusive work environment that is discriminatory." Compl. ¶ 70; *see also id.* ¶ 1 ("This action is authorized and instituted . . . for the Defendant's unlawful harassment, discrimination, and hostile work environment."); Opp'n at 7–8 ("At every turn, Plaintiff was met with inaction that enabled a hostile work environment to flourish and that harassment and hostility was tantamount to being severe and pervasive.  All the incidents that Plaintiff endured form a clear picture of a hostile work environment that the Defendant did nothing to stop or prevent.").

To prevail on a Title VII (or an ADA[7]) hostile work environment claim, a "plaintiff must show that [her] employer subjected [her] to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Baloch*, 550 F.3d at 1201 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  "The work environment must be both objectively and subjectively hostile, meaning that a reasonable person would find it hostile or abusive, and that the victim must subjectively perceive the environment to be abusive." *Hill*, 897 F.3d at 237 (citation omitted and cleaned up).  Keith has alleged that she subjectively perceived her working environment to be hostile, *see* Compl. ¶ 27, but she has not plausibly pleaded objectively severe or pervasive abuse.

---

[7] The D.C. Circuit has assumed, without deciding, that the ADA provides a cause of action for a hostile work environment predicated on disability status, and courts evaluate such claims using the same standards applicable under Title VII.  *Hill v. Assocs. for Renewal in Educ., Inc.*, 897 F.3d 232, 236–37 (D.C. Cir. 2018); *Kuraner v. Mineta*, No. 00-5416, 2001 WL 936369, at *1 (D.C. Cir. July 10, 2001) (per curiam summary affirmance); *Davis v. George Washington Univ.*, 26 F. Supp. 3d 103, 122 (D.D.C. 2014).

For one thing, Keith faces an uphill battle because her "hostile work environment claim is essentially an amalgamation of [her] discrimination and retaliation claims, which courts have been reluctant to transform into a cause of action for hostile work environment." *Massaquoi*, 81 F. Supp. 3d at 53 (citation omitted and cleaned up); *see* Opp'n at 7 ("The allegations stated in the preceding sections [regarding discrimination and retaliation] all lend themselves to having created a hostile work environment that the Plaintiff was unable to receive a reprieve from."). For another, as the Court has explained above, Keith's allegations do not plausibly suggest that the failure to give constructive feedback, the 2019 negative performance review, the bar from team travel, or the cancellation of telework were related to her race, sex, age, or disability. *See Baloch*, 550 F.3d at 1191 (affirming grant of summary judgment against a hostile environment plaintiff in part because "none of the comments or actions directed at [the plaintiff] expressly focused on his race, religion, age, or disability—unlike in some hostile work environment cases"); *Budik*, 986 F. Supp. 2d at 8 ("[A]lthough the complaint further alleges that Dr. Duerinckx restricted the plaintiff's privileges to backlog work and put the plaintiff on a different payroll schedule from other unidentified employees, the plaintiff connects neither of these allegations to her status as a member of a protected class and thus has not stated a prima facie case through the assertion of these incidents."); *Doe #1*, 554 F. Supp. 3d at 112.

That leaves the "negative comments regarding [Keith's] disability" and the "conflicting instructions about whether to speak up when she could not hear." *See* Compl. ¶ 27. "To determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Baloch*, 550 F.3d at 1201. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely

14

serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (cleaned up).

The Complaint does not specify exactly how many of these disability-related incidents occurred. There was one exchange in which Ms. Fagan said it was "good" that Keith was getting hearing aids because it meant Keith was "'getting help'" and one incident in which Villas "compared [Keith] getting hearing aids to her sister getting glasses." Compl. ¶ 27. Then, there were two incidents in which Keith received contradictory instructions about whether to interrupt meetings when she had trouble hearing. *Id.* Finally, during an unspecified number of "meetings," Shea "kept asking" Keith "'Can you hear, can you hear?'" *Id.* Even interpreting all of these remarks in their worst light, they are on the order of insensitive comments courts have held not severe or pervasive enough to alter the conditions of employment. For example, in *George v. Leavitt*, the D.C. Circuit held at the summary judgment stage that a plaintiff had not established a hostile environment even though she had been "told by three separate employees to 'go back to Trinidad' or to 'go back to where [she] came from'"; she had also been "shouted at," told to "shut up," and told that she should never have been hired. 407 F.3d 405, 408, 416–17 (D.C. Cir. 2005). When the plaintiff tried to report these incidents, her supervisor blamed them on her. *Id.* at 408. And in *Smith v. De Novo Legal, LLC*, this Court held that a worker had not stated a hostile work environment claim based on "a few offhand comments" that arguably were racially insensitive. 905 F. Supp. 2d 99, 103 (D.D.C. 2012). Indeed, the comments directed to Keith were strikingly similar in content and volume to remarks directed to the hearing-disabled plaintiff in *Ballard-Carter v. Vanguard Group*, which the Third Circuit held did not establish an actionable hostile work environment: "(1) 'Oh, that's right, I forgot you were deaf,' (2) 'you're supposed to be talking loudly at your desk,' (3) 'we just said that you weren't listening,' and (4)

15

quotations around the word 'heard' in an email to [plaintiff] regarding a client request." 703 F. App'x 149, 152 (3d Cir. 2017).  Keith's counsel does not cite any authority in support of her hostile work environment claim.  Opp'n at 7–8.  In sum, Keith alleges only "a few isolated incidents of offensive conduct," which "do[es] not amount to actionable harassment."  *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002).  Therefore, the Complaint does not permit the Court to reasonably infer that Keith faced a discriminatory hostile work environment.

\*\*\*

Though the allegations in the Complaint—the only source the Court may consider at this stage—do not state any claims, there exists a possibility that amended allegations could alter this conclusion.  Regarding retaliation, Keith's counsel represents in her briefing to this Court that Keith "contested her 2018 performance appraisal rating on the basis that it was motivated by her race, sex, age, and disability."  Opp'n at 4.  As for the hostile environment claim, the calculus might change, for example, if it were to turn out that Shea "kept asking 'Can you hear, can you hear?'" many times over a sustained and repeated course of "meetings."  Compl. ¶ 27.  And additional information about whether comparator employees were situated similarly to Keith might alter the discrimination analysis.  Or, perhaps, Keith may attempt to allege discriminatory treatment based on methods other than comparing herself to similarly situated employees.  Accordingly, at this early stage, the Court will dismiss the Complaint without prejudice and permit Keith, should she wish, to move for leave to file a proposed amended complaint within 30 days (attaching the proposed pleading).  *See* LCvR 15.1 ("A motion for leave to file an amended pleading shall attach, as an exhibit, a copy of the proposed pleading as amended."); *Thomas v. District of Columbia*, No. 21-CV-00584, 2021 WL 5769443, at \*1 (D.D.C. Dec. 6, 2021).  Should she fail to do so by that time, the dismissal will be with prejudice.

## IV.  CONCLUSION

For the foregoing reasons, Defendant GAO's Motion to Dismiss (ECF No. 4) is **GRANTED**, and the case is **DISMISSED WITHOUT PREJUDICE**.  If Keith does not seek leave to file an amended complaint within 30 days, the Court will dismiss the case with prejudice.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  08/29/2022                                                                              RUDOLPH CONTRERAS
                                                                                                                United States District Judge