## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| CAMILLE KEITH, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 21-2010 (RC) |
| | : | | |
| v. | : | Re Document No.: | 24 |
| | : | | |
| U.S. GOVERNMENT ACCOUNTABILITY | : | | |
| OFFICE, | : | | |
| | : | | |
| Defendant. | : | | |

## <u>MEMORANDUM OPINION</u>

### Granting Defendant's Motion to Dismiss Plaintiff's Amended Complaint

## I. INTRODUCTION

Plaintiff Camille Keith ("Plaintiff" or "Keith") brings the instant suit against her former employer, the United States Government Accountability Office ("GAO"), alleging claims of disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and hostile work environment under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.  See* Pl.'s Am. Compl. ("Pl.'s Am. Compl."), ECF No. 21.   Keith's initial complaint in this matter, *see* Pl.'s Compl., ECF No. 1, was dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, *see* Mem. Op. ("Mem. Op."), ECF No. 15.  She has since filed an amended complaint, and GAO now moves for dismissal, again arguing that Keith has failed to state a claim upon which relief can be granted. *See* Def.'s Mot. to Dismiss ("Def.'s Mot. to Dismiss"), ECF No. 24.  For the reasons discussed below, GAO's motion is granted.

## II.  BACKGROUND

### A.  Factual Background

Keith's amended complaint describes a series of events occurring in 2019, during which time she was employed as a "Band 1 Analyst" in GAO's "Forensic Audits and Investigative Service" division.  Pl.'s Am. Compl.  ¶¶ 18, 46.  In that capacity, she was assigned to a team that was "examining fraud risk management at the Federal Emergency Management Agency."  *Id.* ¶ 19.  Among other things, her work on the team included conducting "research and interviews," "performing analyses," drafting "written products" such as "records of interviews," and developing relationships with individuals both "inside and outside" of GAO.  *Id.* ¶ 18.

Early in 2019, Keith informed "her team that she was suffering from [a] hearing impairment," *id.* ¶ 23, that caused her "significant hearing loss in both [of her] ears" and required that she use hearing aids, *id.* ¶ 17.  In the months that followed, she encountered a number of difficulties and unpleasant experiences at work.  For instance, on February 27, Keith told team members that she was having "hearing problems during a call."  *Id.* ¶ 24.  In response, she "was told that if she could not hear over the phone she needed to go into the office."  *Id.*  That directive was rescinded, however, when another team member also reported having difficulty hearing the content of the discussion.  *Id.*

Keith's workplace challenges mounted as the year progressed.  On April 1, for example, she "was assigned to complete a site selection on her own while other members of the team were allowed to work together."  *Id.* ¶ 26.  Two weeks later, Keith's supervisor told her that the "team could no longer review her meeting write-ups and add notes."  *Id.* ¶ 28.  Then, on May 1, Keith received word that she had been given an "unacceptable rating . . . on her mid-year review."  *Id.* ¶¶ 29, 30.  This rating was two levels lower than her previous rating, yet Keith was not given

prior "warning that her work was declining despite the GAO's directive that a supervisor is supposed to inform an employee of a rating drop as soon as possible." *Id.* ¶ 29.  Keith sought "further clarification" from her supervisor regarding her unexpected performance rating, but did not initially "receive[] a reply." *Id.* ¶ 30.  Two weeks later, however, she was told that if she "asked for guidance, it would reflect poorly in her [future] evaluation." *Id.* ¶ 31.  As a result, Keith "was unable to attempt to learn or improve without it being held against her in later ratings." *Id.*

Keith's situation at work continued to deteriorate.  In June, she was told by human resources "that her telework arrangement was being canceled." *Id.* ¶ 40.  Human resources cited her "unacceptable work performance" as the reason for the cancellation. *Id.*  The same reason was cited as a basis for denying Keith permission to travel with the rest of the engagement team to conduct in-person interviews on "two occasions" (it is not clear when).[1] *Id.* ¶ 33.  Instead, she "was forced to listen to the interviews via phone despite having informed her office that her hearing loss made it difficult for her to listen in via phone." *Id.*  Even though Keith had been prohibited from attending the interviews in person, she was still required to complete "write-ups" in their aftermath. *Id.*  The responsibility for drafting the "write-ups" "[n]ormally" fell to members of the team who had physically attended the interviews. *Id.*  To attempt to remedy the situation, Keith asked to see "notes from team members who had" physically attended the interviews. *Id.* ¶ 38.  She was told, however, that the "notes would not be shared." *Id.*

Keith further alleges that, during "meetings [and interviews over the] phone," she was given conflicting instructions as to whether she should make it known that she was having

---

[1] Keith was first told that the reason she was not permitted to attend the interviews was "team structure."  Pl.'s Am. Compl. ¶ 33.

difficulty hearing.  *Id.* ¶ 34.  She says that she was first "told not to interrupt the meetings if she had trouble hearing," but was later instructed "that she *should* speak up if she could not hear." *Id.*  This caused her "extreme anxiety [because] it seemed that whether or not [she] spoke up, she would be in trouble."  *Id.*  Further adding to Keith's stress was the fact that, during at least some of the interviews, one of her supervisors "made it a point to ask if [Keith] could hear."  *Id.* ¶ 35. This "embarrassed" Keith and increased her "feelings of harassment."  *Id.*

Keith details other instances in which "negative comments regarding her disability . . . made her feel upset, uncomfortable, and belittled."  *Id.* ¶ 37.  To that end, she cites one instance in which her supervisor replied that it was "good" that Keith was "getting help" after Keith told her that she was getting hearing aids.  *Id.*  Keith also refers to an unspecified number of meetings in which a colleague "kept asking 'Can you hear, can you hear?'"  *Id.*  This, too, made Keith feel "uncomfortable" and "insult[ed]."  *Id.*  Finally, Keith felt that it was "offensive and inappropriate" when a colleague compared "[Keith] getting hearing aids to [the colleague's] sister getting glasses."  *Id.*

As 2019 was finally coming to a close, Keith "received a low rating" on her year-end performance review.  *Id.* ¶ 45.  The consequence, she was told, was that "she would be placed on a Performance Improvement Plan."  *Id.*  By that point, however, Keith was convinced that "her efforts to succeed . . . would be frustrated without reason by" her supervisors.  *Id.*  Rather than continue to "endure the harassment she face[d] as a result of her disability," she "chose to resign" from her position in the final month of the year.  *Id.*

### B.  Procedural Background

Following Keith's resignation, she filed suit in federal court, alleging claims under Title VII (for discrimination on the basis of race and sex as well as retaliation), the Age

Discrimination in Employment Act of 1967 ("ADEA"), and the ADA.  *See* Pl.'s Compl.  GAO moved for dismissal, *see* Def.'s Mot. to Dismiss Pl.'s Compl., ECF No. 4, and the Court granted the motion without prejudice to Keith's right to seek leave to file an amended complaint, *see* Mem. Op. at 16–17.  Keith sought (and was granted) such leave, and she filed her amended complaint on December 20, 2022.  *See* Pl.'s Am. Compl.  On January 24, 2023, GAO again moved for dismissal under Federal Rule of Procedure 12(b)(6) on grounds that Keith failed to state a claim upon which relief can be granted.  *See* Def.'s Mot. to Dismiss.

### III.  ANALYSIS

Keith's amended complaint alleges one count of discrimination under the ADA and a second count for hostile work environment under Title VII.  Keith fails, however, to raise sufficient facts to state a plausible claim for relief under either statute.  Both counts will, therefore, be dismissed.

### A.  Legal Standard

A plaintiff must provide a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), that "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (citation omitted).  A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a complaint" by asking whether the plaintiff has properly stated a claim for which relief can be granted.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  In considering such a motion, the complaint must be construed "liberally in the plaintiff's favor with the benefit of all reasonable inferences derived from the facts alleged."  *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006) (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, *Twombly*, 550 U.S. at 555, "a complaint must contain sufficient factual matter, [if] accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a motion to dismiss.  *Id.*  Similarly, there is no obligation to accept the plaintiff's legal conclusions as true, nor to presume the truth of legal conclusions that are couched as factual allegations.  *See Twombly*, 550 U.S. at 555.

## B.  ADA Discrimination Claim

Keith alleges that GAO (through its employees) discriminated against her on the basis of disability in six different ways: (1) by making insensitive and negative comments regarding her hearing impairment; (2) by giving her conflicting instructions as to whether she should alert others when she could not hear during meetings; (3) by failing to give her feedback regarding her performance; (4) by issuing her a bad year-end performance review; (5) by revoking her telework arrangement; and (6) by preventing her from physically attending interviews on two separate occasions.  Pl.'s Am. Compl. ¶ 51.  GAO argues that none of these alleged acts of discriminatory treatment constitute the type of adverse employment action necessary to state a discrimination claim under the ADA.  GAO further contends that, even if they are sufficiently adverse, Keith has failed to allege a causal link between those actions and her disability.[2]

---

[2] Before addressing the merits of Keith's discrimination claim, GAO also argues that her claim for discrimination should be dismissed for failure to exhaust administrative remedies.  *See* Def.'s Mot. to Dismiss at 5–7.  Specifically, GAO contends that Keith did not timely seek to informally resolve her claim within the forty-five day window required by the applicable GAO regulations.  *See id.*  It is true that GAO regulations require employees "to contact an [Office of Opportunity and Inclusion ("O&I")] counselor within 45 days of the date of the matter alleged to be discriminatory" in order to attempt to resolve charges "alleging prohibited discrimination."

1.  Legal Framework

Title I of the ADA prohibits employers from "discriminat[ing] against a qualified

individual on the basis of disability . . . [in the] terms, conditions, and privileges of

employment."  42 U.S.C. § 12112; *see Hill v. Assocs. for Renewal in Educ., Inc.*, 897 F.3d 232,

237 (D.C. Cir. 2018).  In order to state a claim of discrimination under the ADA, a plaintiff must

plausibly allege that "(i) [she] suffered an adverse employment action (ii) because of [her]

disability."[3]  *Waggel v. George Washington Univ.*, 957 F.3d 1364, 1373 (D.C. Cir. 2020)

(quoting *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1226 (D.C. Cir. 2008)).

*Adverse Employment Action.*  Until recently, the D.C. Circuit had defined the phrase

"adverse employment action" such that, to find an adverse employment action, a court needed to

"conclude that 'a reasonable trier of fact could find *objectively tangible harm'* based on

---

*Heavans v. Dodaro*, 2022 WL 17904237, at *6 (D.D.C. Dec. 23, 2022) (quoting GAO Order 2713.2 at ch. 3)).  But it is also true that an agency can "waive" an exhaustion defense if it "accepts," "investigates," and "decide[s] [a complaint] on the merits—all without mentioning timeliness."  *Bowden v. United States*, 106 F.3d 433, 438 (D.C. Cir. 1997); *see Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 86–87 (D.D.C. 2009).

Keith does not meaningfully contend that she satisfied the forty-five-day informal consultation requirement.  *See* Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n") at 2–3, ECF No. 25 (arguing that she contacted an O&I counsel "months *prior*" to resigning).  But Keith also notes that GAO "investigated" and resolved the formal complaint of discrimination that she later lodged.  *Id.* at 3.  The record suggests that GAO never relied upon—or even referred to— timeliness in resolving Keith's formal complaint.  *See* Ex. 2 to Pl.'s Opp'n, ECF No. 25-4; *see also Vasser v. McDonald*, 228 F. Supp. 3d 1, 9–10 (D.D.C. 2016) ("In the context of exhaustion, courts are willing to rely upon administrative orders and administrative complaints without converting the motion into one for summary judgment when the documents are 'referred to in the complaint, . . . are integral to [the plaintiff's] exhaustion of administrative remedies, and are public records subject to judicial notice.'" (quoting *Laughlin v. Holder*, 923 F. Supp. 2d 204, 209 (D.D.C. 2013))).  In any event, because the Court will dismiss Keith's discrimination claim on its merits, there is no need to definitively decide whether GAO waived an exhaustion defense here.

[3] Although the ADA does not apply to federal executive branch employees, it does apply to employees of the GAO because GAO is an "agency of the legislative branch."  *See Duffy v. Dodaro*, No. 16-cv-1178, 2020 WL 1323225, at *8 (D.D.C. Mar. 21, 2020) (citing 42 U.S.C. § 12209(5)).

'materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities.'" *Black v. Guzman*, No. 22-cv-1873, 2023 WL 3055427, at *7 (D.D.C. Apr. 24, 2023) (emphasis added) (quoting *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002)); *see also Blackwell v. SecTek, Inc.*, 61 F. Supp. 3d 149, 158 (D.D.C. 2014) (requiring "objectively tangible harm" to state a claim for discrimination under the ADA).  The objectively-tangible-harm requirement was intended to separate "[m]ere idiosyncrasies of personal preference" (which were not actionable) from "materially adverse consequences affecting the terms, conditions, or privileges of [the plaintiff's] employment or her future employment opportunities" (which were actionable).  *Brown v. Brody*, 199 F.3d 446, 457 (D.C. Cir. 1999).

Last year, however, the D.C. Circuit's decision in *Chambers v. District of Columbia,* 35 F.4th 870 (D.C. Cir. 2022) (en banc), altered the calculus.  In *Chambers*, the en banc court held, in the context of Title VII, that the objectively-tangible-harm requirement was inconsistent with the text of the statute and that, therefore, a plaintiff need not allege that she suffered an "objectively tangible harm" in order to state a claim for discrimination.  *See id.* at 874–75. Rather, all that is required is that the plaintiff allege "that an employer has discriminated against an employee with respect to that employee's 'terms, conditions, or privileges of employment.'" *Id.*; *see Bain v. Off. of Att'y Gen.*, No. 21-cv-1751, 2022 WL 17904236, at *18 (D.D.C. Dec. 23, 2022) (explaining that "no more and no less" is required).  While the standard "is not without limits" because "not everything that happens at the workplace affects an employee's 'terms, conditions, or privileges of employment,'" the court emphasized that the standard "is 'capacious,' and 'evince[s] [Congress's] intent to strike at the entire spectrum of disparate

treatment . . . in employment." *Chambers*, 35 F.4th at 874 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)).[4]

Although *Chambers* could be read to apply only to allegations of discrimination under Title VII (or, even more specifically, to "cases involving [job] transfers," *see McCallum v. Mayorkas*, No. 21-cv-1911, 2023 WL 3203011, at *9 n.9 (D.D.C. May 2, 2023)), several courts have reached the conclusion that *Chambers* sweeps more broadly, *see Pressley v. Mgmt. Support Tech., Inc.*, No. 22-cv-2262, 2023 WL 5206107, at *6 (D.D.C. Aug. 14, 2023) (collecting cases). Those courts have therefore held that the "objectively tangible harm" requirement should no longer be applied when weighing allegations of discrimination under other antidiscrimination statutes, such as the ADEA, the Rehabilitation Act, and, most relevantly, the ADA.  *See Pressley*, 2023 WL 5206107, at *6 (ADA); *Bain*, 2022 WL 17904236, at *19 (ADEA and Rehabilitation Act).  This Court will follow their lead.  After all, the ADA's antidiscrimination provision is "indistinguishable" from the antidiscrimination provision in Title VII on which *Chambers* turned, *Mogenhan v. Napolitano*, 613 F.3d 1162, 1165 (D.C. Cir. 2010), and, as a result, "courts have [long] 'applied Title VII principles in considering adverse employment actions under the ADA,'" *Pressley*, 2023 WL 5206107, at *6 (quoting *Blackwell*, 61 F. Supp. 3d at 158 n.6); *Weigert v. Georgetown Univ.*, 120 F. Supp. 2d 1, 17 (D.D.C. 2000) ("Because the ADA incorporates the procedures of Title VII, rulings in this area applying to adverse actions are relevant [to evaluating adverse actions under the ADA].").

---

[4] Throughout its briefing, GAO argues that the Court should still apply a "material advers[ity]" standard to evaluate whether the allegedly discriminatory acts at issue constitute adverse employment actions.  *See* Def.'s Mot. to Dismiss at 8–13.  But *Chambers* rejects the notion that a plaintiff must demonstrate that an employer's action was "materially adverse" in order to state a claim of discrimination.  *See Chambers*, 35 F.4th at 876–77 (explaining that material adversity standard governs claims based on Title VII's antiretaliation provision but not Title VII's "fundamental[ly] differen[t]" antidiscrimination provision).

*Causation.*   In addition to pleading facts sufficient to show that she suffered an adverse action, a plaintiff must show that the defendant took the action "*because of* [her] disability." *Walden v. Patient-Centered Outcomes Rsch. Inst.*, 304 F. Supp. 3d 123, 141 (D.D.C. 2018) (emphasis added).   It remains an "open question in this circuit" as to whether a plaintiff must satisfy a "but-for or proximate causation" standard to state a claim under the ADA.   *Klotzbach-Piper v. Nat'l R.R. Passenger Corp.*, No. 18-cv-1702, 2021 WL 4033071, at *10 n.5 (D.D.C. Sept. 3, 2021) (quoting *Haughton v. District of Columbia*, 819 F. App'x 1, 2 (D.C. Cir. 2020)); *see Pressley*, 2023 WL 5206107, at *9.   Application of a "but-for causation standard would require a plaintiff to show that the defendant "'would not have fired him but for his . . . disability,' such that 'proof of mixed motives will not suffice.'"   *Pressley*, 2023 WL 5206107, at *9 (quoting *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 962 (7th Cir. 2010)).   On the other hand, "a 'motivating factor' causation analysis would mean that a 'claim can be sustained if discriminatory animus is merely one of several factors that precipitated the adverse employment action.'"   *Id.* (quoting *Drasek v. Burwell*, 121 F. Supp. 3d 143, 154 (D.D.C. 2015)).

### 2. Application to Keith's Discrimination Claim

With that backdrop in mind, the Court turns to the specific instances which Keith claims constitute discriminatory treatment.   To refresh, Keith's amended complaint cites six actions or categories of actions which she argues constitute adverse employment actions.   Specifically, she cites (1) the "negative comments [made by her colleagues regarding] her disability"; (2) "conflicting directions [she received from supervisors] regarding her participation in work activities"; (3) her supervisors' failure to provide her with "constructive feedback" to improve her performance; (4) her receipt of a "negative performance review for the 2019 appraisal period"; (5) GAO's "cancel[lation] of her telework arrangement"; and (6) GAO's decision to

"bar[] [her] from traveling with the team on site visits."  Pl.'s Am. Compl. ¶ 51.  GAO argues that none of the challenged actions constitutes an adverse employment action sufficient to state a discrimination claim under the ADA, and even if they do, that Keith has failed to show that the actions were taken because of her disability.  *See* Def.'s Mot. To Dismiss at 7–18.

*Negative Comments.*  Keith first alleges that the comments made by her colleagues relating to her disability constitute an adverse employment action.  Although Keith's opposition to GAO's motion to dismiss does not specifically identify the comments which she found objectionable, her complaint details a few instances in which comments made by her colleagues could be construed as derogatorily referencing her hearing impairment.  For example, Keith's amended complaint alleges that one of her supervisors "made it a point to ask if Plaintiff could hear" during interviews, *id.* ¶ 35, while another colleague would ask Keith "Can you hear, can you hear?" during meetings, *id.* ¶ 37.  Further, Keith's amended complaint cites an instance in which her supervisor told her it was "good" that she was "getting help" after Keith had mentioned that she was getting hearing aids.  *Id.* ¶ 37.  And finally, the complaint refers to another instance in which a colleague compared getting hearing aids to getting glasses.  *Id.*

Even viewed in their worst light, the remarks made by Keith's colleagues do not plausibly amount to an adverse employment action.  Rather, the comments are, at most, akin to the "rude and disrespectful" behavior that courts have "consistently held" fail to give rise to a discrimination claim.  *Taylor v. Haaland*, No. 20-cv-3173, 2022 WL 990682, at *3 (D.D.C. Mar. 31, 2022); *Jones v. Bush*, 160 F. Supp. 3d 325, 346 (D.D.C. 2016) (explaining that "acts of disrespect or rudeness are nothing like the ultimate employment decisions typically deemed adverse").  And although Keith alleges that her colleagues' comments made her "upset," "uncomfortable," and "embarrassed," Pl.'s Am. Compl. ¶¶ 35, 37, that is not enough to elevate

her colleagues' behavior into an actionable claim for discriminatory treatment given the D.C

Circuit's guidance that "discrete episodes" of "'public humiliation' . . . fall[] below the

requirements for an adverse employment action." *Baird v. Gotbaum*, 662 F.3d 1246, 1249 (D.C.

Cir. 2011) (quoting *Stewart v. Evans*, 275 F.3d 1126, 1136 (D.C. Cir. 2002)); *see also*

*Montgomery v. McDonough*, No. 22-cv-1715, 2023 WL 4253490, at *9 (D.D.C. June 29, 2023)

(holding that plaintiff's "unpleasant" interactions with colleagues did not rise to level of an

"adverse action" that "affected the terms of [plaintiff's] employment").

 *Conflicting Instructions.*  Keith next alleges that the conflicting instructions she received

from her supervisors constituted an adverse employment action.  Specifically, Keith's amended

complaint charges that she received differing "directive[s]" as to whether she should "speak up"

during meetings when she was unable to hear.  Pl.'s Am. Compl. ¶ 34.  She further alleges that

the contradictory instructions caused her "extreme anxiety" because she did not know whether

she would get "in trouble" for speaking up.  *Id.*

 Neither Keith's amended complaint nor her opposition brief purport to explain how her

supervisors' instructions impacted the terms or conditions of her employment.  Her brief simply

argues that it is "plain" that they did so.  Pl.'s Opp'n at 8.  Even post-*Chambers*, plaintiffs must

do more than "baldly stat[e] that the alleged employment action adversely affected the terms,

conditions, or privileges of employment without proffering supporting facts or allegations."

*Black*, 2023 WL 3055427, at *8; *see Chambers*, 35 F.4th at 878 (emphasizing that plaintiff still

must "plead sufficient factual matter to state a discrimination claim that is plausible on its face"

(cleaned up)).  Keith's amended complaint fails to meet that very low bar.  And though the Court

does not doubt that conflicting instructions such as the ones given by Keith's supervisors would

have caused her a great deal of frustration and anxiety, that alone does not provide a sufficient

foundation upon which Keith may ground a discrimination claim.  *See, e.g.*, *Heavans v. Dodaro*, No. 22-cv-836, 2022 WL 17904237, at *8 (D.D.C. Dec. 23, 2022) (post-*Chambers* case finding that supervisor's actions "undoubtedly caused [plaintiff] tribulations" and "eroded [his] morale" but nonetheless "did not adversely affect the conditions of plaintiff's employment").

    *Insufficient Feedback.*  So, too, Keith's supervisors' unwillingness to provide her with feedback is not an adverse action.  Keith alleges that, following her receipt of "an unacceptable [performance] rating" on her mid-year review, she sought to "discuss" her unexpectedly low rating with her supervisor but was met with silence.  Pl.'s Am. Compl. ¶¶ 29, 30.  A few weeks later, that same supervisor told Keith that "if [she] asked for guidance, it would reflect poorly in her [future] evaluation."  *Id.* ¶ 31.  According to Keith, this rendered her "unable to attempt to learn or improve without it being held against her in later ratings."  *Id.*

    Nevertheless, even favorably construed, the facts alleged do not give rise to the inference that Keith's supervisors' unwillingness to provide her with feedback had an impact on the terms or conditions of her employment.  *See Freedman v. MCI Telecomms. Corp.*, 255 F.3d 840, 848 (D.C. Cir. 2001) (explaining that plaintiff's receipt of "inadequate . . . guidance or feedback regarding his job performance" did not constitute adverse action where plaintiff failed to show that lack of feedback effected "a sufficient change in the terms and conditions of his employment"); *Nichols v. Vilsack*, No. 13-cv-01502, 2015 WL 9581799, at *11 (D.D.C. Dec. 30, 2015) (similar).  Instead, her supervisors' refusal to provide feedback "fall[s] into the category of a supervisor's ordinary workplace exercise of authority that [does] not adversely affect the conditions of [Keith's] employment."  *Heavans*, 2022 WL 17904237, at *8.

    *Poor Performance Review.*  Next, Keith alleges that she suffered an adverse action when she "received a low [performance] rating at the end of 2019."  Pl.'s Am. Compl. ¶ 45.  GAO

contends that that review does not represent an adverse employment action because Keith has not

pled any facts showing that the negative review "affect[ed] [her] 'position, grade level, salary, or

promotion opportunities."  Def.'s Mot. to Dismiss at 9 (quoting *Taylor v. Solis*, 571 F.3d 1313,

1321 (D.C. Cir. 2009)).

 Prior to *Chambers*, courts had regularly held that poor performance reviews, by

themselves, do not ordinarily constitute actionable adverse employment actions.  *See Douglas v.*

*Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009); *Walden*, 304 F. Supp. 3d at 137 (collecting cases

and showing "it is well established . . . that negative performance evaluations are not adverse

employment actions").  The cases reasoned that, standing alone, the mere fact of one bad review

was too "speculative" to be actionable.  *Douglas*, 559 F.3d at 552 (explaining that "[t]he result of

[one bad] evaluation is often speculative" because "a single poor evaluation may drastically limit

an employee's chances for advancement, or it may be outweighed by later evaluations and be of

no real consequence" (quoting *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001)).  That

being so, plaintiffs needed to allege additional facts showing that a bad review resulted in an

"'objectively tangible' harm."  *Id.* at 552.  And the principle way of doing so was by

demonstrating that a negative review had detrimentally impacted the plaintiff's "position, grade

level, salary, or promotion opportunities."  *Taylor*, 571 F.3d at 1321 (quoting *Baloch v.*

*Kempthorne*, 550 F.3d 1191, 1199 (D.C. Cir. 2008)).

 It seems unlikely that the rule on which GAO relies survives *Chambers*.  *See Chambers*,

35 F.4th at 874 ("The unadorned wording of [Title VII] admits of no distinction between

'economic' and "non-economic" discrimination or 'tangible' and 'intangible' discrimination.").

This is especially so given that that rule can be traced directly back to language in *Brown*, 199

F.3d at 458, the case overruled by the D.C. Circuit in *Chambers*.  *See Taylor v. Small*, 350 F.3d

1286, 1293 (D.C. Cir. 2003) (quoting *Brown* for the proposition that "'formal criticism or poor performance evaluations are not necessarily adverse actions' and they should not be considered such if they did not 'affect the employee's grade or salary'" (cleaned up)).  The Court therefore disagrees with GAO that Keith needed to plead that her negative performance review had an adverse impact on her "position, grade level, salary, or promotion opportunities." *Baloch*, 550 F.3d at 1199.  Rather, to survive a motion to dismiss, Keith only needed to plead facts sufficient to give rise to a reasonable inference that the bad performance review affected the "terms, conditions, or privileges of [her] employment." *See Chambers*, 35 F.4th at 874–75.

But Keith has not carried that burden here.  Her complaint alleges no facts suggesting that the negative review she received for the 2019 performance period had an impact on a term, condition, or privilege of her employment.  And although she argues in her opposition brief that the negative review "absolutely would have" had an adverse impact on her "potential for career advancement," Pl.'s Opp'n at 9 (quoting *Liu v. Georgetown Univ.*, No. 22-cv-157, 2022 WL 2452611, at *5 (D.D.C. July 6, 2022)), her complaint does not allege any *facts* suggesting the precise manner in which that might have been so.  *See Black*, 2023 WL 3055427, at *8 ("[P]laintiff cannot avoid dismissal of her . . . discrimination claim by baldly stating that the alleged employment action adversely affected the terms, conditions, or privileges of employment without proffering supporting facts or allegations.").  Keith's amended complaint only alleges that she was told that she would be put on a performance improvement plan following the bad review; her complaint does not allege that she was actually put on such a plan or, if she was, how such a plan impacted the terms or conditions of her work.  *See Garza v. Blinken*, No. 21-cv-02770, 2023 WL 2239352, at *5 (D.D.C. Feb. 27, 2023) (finding that plaintiff's receipt of "proposed letter or reprimand" was insufficient, standing alone, to constitute an adverse action

under *Chambers* given that plaintiff did not plead any facts suggesting the proposed letter ever actually impacted the terms or conditions of her employment).  Moreover, given that Keith resigned shortly after learning of the poor review, it seems unlikely that her working conditions were altered by the year-end performance rating or her potential placement on a performance improvement plan.  *See Harrison v. Off. of the Architect of the Capitol*, 964 F. Supp. 2d 81, 99 (D.D.C. 2013) (finding no adverse action where plaintiff was placed on a performance improvement plan but the "plan was never implemented because the Plaintiff went on extended sick leave the day after the plan was issued").

Because Keith fails to allege facts giving rise to an inference that her poor performance review affected the terms or conditions of her employment, the Court concludes that the review does not constitute an adverse employment action.  This holding accords with decisions reached by other courts in this district following *Chambers*.  *See McCallum*, 2023 WL 3203011, at *12; *Heavans*, 2022 WL 17904237, at *8.

In all events, even if Keith's 2019 year-end performance review did constitute an adverse employment action, nothing in her complaint gives rise to a reasonable inference that Keith received the unfavorable review *because of* her disability.  *See Giles v. Transit Emps. Fed. Credit Union*, 794 F.3d 1, 5 (D.C. Cir. 2015) (explaining that plaintiff must show she "suffered an adverse employment action because of [her] disability" (quoting *Duncan v. Washington Metro. Area Transit Auth.*, 240 F.3d 1110, 1114 (D.C. Cir. 2001)).  At the pleading stage, a plaintiff bears the burden of alleging "some facts" to give rise to the reasonable inference that her disability "was the reason for the defendant's actions."  *Doe #1 v. Am. Fed'n of Gov't Emps.*, 554 F. Supp. 3d 75, 103 (D.D.C. 2021) (quoting *Bray v. RHT, Inc.*, 748 F. Supp. 3, 5 (D.D.C. 1990)). As the Court previously explained, "[a] frequent means of pleading factual allegations sufficient

to 'raise an inference of discrimination' under . . . the ADA . . . is 'by showing that [the plaintiff] was treated differently from similarly situated employees who are not part of the protected class.'"  Mem. Op. at 6 (quoting *Doe #1*, 554 F. Supp. 3d at 103).

Plaintiff attempts to follow that route here by alleging that another "Analyst" on the team "did not receive an unacceptable performance rating . . . during [the same] time period."  Pl.'s Am. Compl. ¶¶ 19, 44.  But to plausibly plead the causation element in this way, Keith must "allege some facts to ground a reasonable inference that [she] was in fact similarly situated to [the] comparator employee[]."  Mem. Op. at 7.  Aside from the similarity in job titles, Keith's amended complaint is devoid of facts suggesting that Keith and her colleague were similarly situated such that their receipt of disparate year-end reviews could give rise to a reasonable inference that Keith's review was based, at least in part, on discriminatory animus.  For one, Keith's amended complaint does not contain anything to suggest that Keith and her proffered comparator had similar duties, responsibilities, or qualifications.  And more importantly, Keith does not allege that she and her colleague performed work of a sufficiently similar caliber—in fact, her amended complaint does not make any allegations at all regarding how well (or poorly) her colleague performed throughout the year.  *See Kline v. Springer*, 602 F. Supp. 2d 234, 240 (D.D.C. 2009) (holding that "plaintiff failed to show that her performance was similar to" that of comparators and therefore had not shown that difference in evaluations gave rise to inference of discrimination).

Nor does the rest of Keith's amended complaint, even when favorably construed, plausibly suggest that discriminatory animus motivated her unfavorable 2019 review.  To the contrary, it is apparent that Keith's supervisors had issues with her performance even *before* they learned of her disability.  To be more specific, the record makes clear that Keith also received a

review with which she was unsatisfied for the 2018 performance year.  *See* Ex. 1 to Pl.'s Opp'n,
ECF No. 25-3 (explaining that Keith "submitted an official grievance" regarding her "2018
rating").  This fact, especially when coupled with Keith's receipt of a low mid-year performance
review in 2019, *see* Pl.'s Am. Compl. ¶ 29, suggests that Keith's performance issues long pre-
dated her supervisors' knowledge of her disability, and, as a result, further undermines any
notion of a causal connection between her year-end review and discriminatory animus.  *Cf.
Crandall v. Paralyzed Veterans of Am.*, 146 F.3d 894, 897 (D.C. Cir. 1998) (explaining that
courts "overwhelmingly agree[] that for [a] causal link to be shown the employer must have
acted with an awareness of the disability itself").

   *Cancellation of Telework Arrangement.*  Contrary to the afore-analyzed actions, the
Court has little difficulty concluding that Keith has plausibly alleged that GAO's decision to
revoke her telework arrangement constituted an adverse employment action.  Keith's amended
complaint does not describe the extent to which GAO's revocation of her telework arrangement
impacted her daily or weekly working conditions.  All the same, it is plausible that revocation of
that arrangement forced Keith to work in-person rather than remotely, and thus amounted to an
adverse change to the terms, conditions, or privileges of her employment.  *See Black*, 2023 WL
3055427, at *8 (holding that employer's "suspension of plaintiff's telework benefits amount[ed]
to an adverse change" to the terms, conditions, or privileges of her employment); *Heavans*, 2022
WL 17904237, at *8 (holding that "the revocation of [plaintiff's] flexible work schedule . . .
[was] inarguably [a] major change[] to the conditions of his employment").

   The issue, however, is that Keith has not plausibly alleged that her telework arrangement
was cancelled "*because of* [her] disability."  *Walden*, 177 F. Supp. 3d at 341 (emphasis added).
To the contrary, Keith's amended complaint states that she was told that the reason her "telework

arrangement was being canceled [was] due to" the poor rating she received at her mid-year review.  Pl.'s Am. Compl. ¶ 40.  Keith does not allege that the reason provided to her was pretextual, and none of the well-pleaded facts in her amended complaint give rise to a reasonable inference that the revocation was based on discriminatory animus.  *See Easaw v. Newport*, 253 F. Supp. 3d 22, 26 (D.D.C. 2017) (explaining that plaintiff can show discrimination through allegations demonstrating that an employer's stated neutral reasons were pretextual).  In other words, there is nothing to suggest that her disability was a "motivating factor," *Drasek*, 121 F. Supp. 3d at 154, in GAO's decision to terminate her telework arrangement.

> *Denial of Permission to Travel.*  Finally, Keith has plausibly alleged that GAO's decision to deny her permission to travel with the rest of the engagement team to conduct in-person interviews on two occasions, *see* Pl.'s Am. Compl. ¶¶ 33, 51, had an adverse effect on the terms or conditions of her employment.  Keith's complaint suggests that it was routine practice for team members to conduct such interviews on-site and then to record their findings and conclusions in formal write-ups after the fact.  *Id.* ¶ 33.  In contravention of the typical practice, Keith was forced to listen to the interviews over the phone—something that was difficult to do in light of her hearing loss.  *Id.*  And despite this added difficulty, Keith was still required to complete and submit written interview summaries.

> Before *Chambers*, it is unlikely that denying Keith permission to travel to attend interviews in-person would have constituted an adverse employment action.  *See, e.g., Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 89 (D.D.C. 2009); *Edwards v. EPA*, 456 F. Supp. 2d 72, 85 (D.D.C. 2006).  But after *Chambers* that is much less clear.  *See Pressley*, 2023 WL 5206107, at *7 (holding that plaintiff suffered adverse employment action when employer excluded him from meetings and told him not to go to a work site).  To be sure, the amended complaint does not

specifically allege that Keith had previously traveled with the team to conduct in-person interviews—a fact that would help the Court determine whether denial of travel permissions *actually* altered the terms or conditions of Keith's employment.  *See Heavans*, 2022 WL 17904237, at *8 (explaining that employer's decision to exclude plaintiff from meetings he had previously attended constituted a "notable alteration to the terms of his employment").  Nor does Keith plead facts specifically detailing how her inability to attend the two interviews negatively impacted her longer-term career prospects.  But at the motion to dismiss stage, the Court is required to construe the amended complaint in the light most favorable to Keith and to draw all inferences in her favor.  *See Iqbal*, 556 U.S. at 678.  Doing so leads to the conclusion that Keith has sufficiently alleged that GAO's decision to prevent her from traveling to interview sites made it more difficult for her to fulfill her job responsibilities and therefore constituted an adverse change to the terms of her employment.  *See Pressley*, 2023 WL 5206107, at *7 (explaining that challenged action "presumably . . . affected [plaintiff's] ability to fulfill his job responsibilities" and, therefore, constituted an adverse employment action post-*Chambers*).

That said, Keith again stumbles when it comes to causation.  In her opposition brief, Keith argues that GAO did not give a "reason or explanation" for why it denied her the "opportunity to attend in-person interviews . . . only *after* [GAO] learned of [Keith's] disability." Pl.'s Opp'n at 10–11.  However, her amended complaint itself states that she was provided with two different explanations for why she was not permitted to travel with the team to conduct interviews: "team structure" and her "rating."  Pl.'s Am. Compl. ¶ 33.  Nothing in her pleadings gives rise to the plausible inference that these stated, neutral reasons were pretextual.  *See Easaw*, 253 F. Supp. 3d at 26.  And more fundamentally, it is Keith who—at the motion to dismiss stage—bears the burden of pleading some facts to support an inference that she was

denied permission to attend the interviews on account of her hearing impairment.  *See Iqbal*, 556 U.S. at 678.  This, she has failed to do.

### 3.  Conclusion

To summarize, Keith has not plausibly alleged that many of the acts giving rise to her discrimination claim—including the negative comments made by her teammates and bosses, the conflicting instructions she received from supervisors, her supervisors' failure to provide her feedback, and her negative year-end performance rating—affected the terms or conditions of her employment such that they can constitute actionable adverse actions.  And although she has pleaded sufficient facts for the Court to conclude that GAO's decision to revoke her telework arrangement and her supervisors' decision to prevent her from attending in-person interviews could have impacted the terms or conditions of her employment, she has not alleged sufficient facts to give rise to a reasonable inference that those actions bore a connection to discriminatory animus.  For those reasons, Keith's discrimination claim will be dismissed.

### C.  Hostile Work Environment

GAO next contends that Kieth's amended complaint fails to state a hostile work environment claim.  "A plaintiff asserting a claim based on a hostile work environment faces a high hurdle."  *Fields v. Vilsack*, 207 F. Supp. 3d 80, 92 (D.D.C. 2016).  She must allege facts sufficient to "show that [her] employer subjected [her] to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Baloch*, 550 F.3d at 1201 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  Determining whether the plaintiff has met this burden requires courts to consider the totality of the circumstances, "including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or

humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

employee's work performance.'"  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116

(2002) (quoting *Harris*, 510 U.S. at 23).  What is more, "a plaintiff must also 'establish that the

allegedly harassing conduct . . . was based on a protected characteristic,' or that there is 'some

linkage between the hostile behavior and [her] membership in a protected class.'"  *Montgomery*,

2023 WL 4253490, at *5 (quoting *Byrd v. Vilsack*, 931 F. Supp. 2d 27, 45 (D.D.C. 2013)).

        In dismissing Keith's initial complaint, the Court explained that one reason she had failed

to state a hostile work environment claim was that "her 'hostile work environment claim is

essentially an amalgamation of [her] discrimination and [unrenewed] retaliation claims.'"  Mem.

Op. at 14 (quoting *Massaquoi v. District of Columbia*, 81 F. Supp. 3d 44, 53 (D.D.C. 2015)).

And as the Court explained, courts are "reluctant to transform [allegations of disparate treatment]

into a cause of action for hostile work environment."  *Wade v. District of Columbia*, 780 F. Supp.

2d 1, 19 (D.D.C. 2011); *see Townsend v. United States*, 236 F. Supp. 3d 280, 312 (D.D.C. 2017)

("Use of the same discrete acts, upon which the plaintiff bases his discrimination . . . claims, to

support a hostile work environment claim is disfavored.").

        Despite the Court's prior admonition, Keith's amended complaint does not cure the

defect identified in her initial complaint.  She instead doubles down.  *See* Pl.'s Opp'n at 12 ("The

allegations stated in the preceding sections [discussing discrimination] all lend themselves to

having created a hostile work environment that the Plaintiff was unable to receive a reprieve

from.").  This strategy is not entirely misplaced, given that there are certain instances in which

"incidents of disparate treatment can establish a hostile work environment if connected in [a]

pervasive pattern of severe harassment," *Wade*, 780 F. Supp. 2d at 19, but the actions on which

Keith's amended complaint rest are simply insufficiently severe and insufficiently pervasive to rise to the level of a hostile work environment.

For example, Keith cites a number of instances in which colleagues or supervisors made comments relating to her hearing impairment.  Those instances include an unspecified number of meetings and interviews in which Keith's supervisor or colleague asked her whether she was able to hear, Pl.'s Am. Compl. ¶¶ 35, 37, one occasion in which a colleague said that it was "good" that Keith was getting hearing aids, *id.* ¶ 37, and another occasion when a colleague compared getting hearing aids to buying glasses, *id.*  These comments—though insensitive and perhaps ill-intentioned—were neither made on a sufficiently frequent basis nor were they so severe as to create a hostile work environment.  Instead, they are more like the "isolated incidents" and "offensive utterances" that prior courts have held insufficient to give rise to a hostile work environment claim.  *George v. Leavitt*, 407 F.3d 405, 416 (D.C. Cir. 2005) (quoting *Harris*, 510 U.S. at 23); *see id.* at 408, 416–17 (holding that plaintiff had not demonstrated a hostile environment despite fact that she had been told on "different occasions" and "by three separate employees to 'go back to Trinidad' or to 'go back to where [she] came from,'" was "shouted at," and told to "shut up").

Nor does her receipt of a negative mid-year review and a poor year-end performance rating change the result.  That is because "'criticisms of work and expressions of disapproval (even loud expressions of disapproval)' are not sufficiently severe to constitute a hostile work environment." *Brooks v. Grundmann*, 851 F. Supp. 2d 1, 7 (D.D.C. 2012) (quoting *Singh v. U.S. House of Representatives*, 300 F.Supp.2d 48, 56 (D.D.C. 2004)); *Walden*, 177 F. Supp. 3d at 345 (holding that plaintiff's "negative performance evaluation" and placement on a performance improvement plan did not demonstrate hostile work environment); *see also Grosdidier v.*

*Chairman, Broad. Bd. of Governors*, 774 F. Supp. 2d 76, 110–11 (D.D.C. 2011) ("[C]ourts have generally rejected hostile work environment claims that are based on work-related actions by supervisors.").

To be sure, Keith's hostile work environment claim does not rest *entirely* on the incidents on which she grounds her discrimination claim.  Specifically, her amended complaint describes one instance in which she was told to "watch her tone," Pl'.s Am. Compl. ¶ 27, another in which it was insinuated that Keith was impermissibly working a second job, *id.* ¶ 32, and a third instance when her supervisor questioned Keith as to whether her grandmother had "actually" passed away, *id.* ¶ 43.  There is no obvious connection between these additional allegations and Keith's hearing impairment, however, and Keith does not attempt to provide one.  *See* Pl.'s Opp'n at 12; *Byrd*, 931 F. Supp. 2d at 45 ("[H]ostile behavior . . . cannot support a claim of hostile work environment unless there exists some linkage between the hostile behavior and the plaintiff's membership in a protected class." (quoting *Motley–Ivey v. District of Columbia*, 923 F. Supp. 2d 222, 233 (D.D.C. 2013)).  And even if there were a plausible connection, none of the additional allegations would come close to suggesting that Keith's work environment was "permeated with discriminatory intimidation, ridicule, and insult" to the degree necessary to render the workplace hostile.  *Newton v. Off. of the Architect of the Capitol*, 905 F. Supp. 2d 88, 95 (D.D.C. 2012) (quoting *Harris*, 510 U.S. at 21); *Peters v. District of Columbia*, 873 F. Supp. 2d 158, 188 (D.D.C. 2012) ("Bosses may be harsh, unfair and rude, but conduct so characterized does not necessarily rise to the level of a Title VII violation.").

For these reasons, Keith has failed to state a hostile work environment claim.  Count II of her complaint will therefore be dismissed.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss the Amended Complaint (ECF No. 24) is **GRANTED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  September 26, 2023                                    RUDOLPH CONTRERAS
                                                              United States District Judge